### 16546.   GAZAWAY *v.* THE STATE.

1. While it is a misdemeanor for any person to shoot at, toward, or into any occupied dwelling house in this State, with any gun, pistol, rifle, or other deadly firearm, except in defense of person, property, or habitation, or under other circumstances of justification, yet if, in addition to the essentials of that offense, the elements of unlawfully shooting at another or of assault with intent to murder are made to appear, the offender may be punished for the felony so shown.   •

 (a) If, in addition to the misdemeanor of shooting into an occupied dwelling house, the offender's intention is to shoot, but not to kill, any person therein, and no person is thereby killed, then the offense is that of unlawfully shooting at another.

 (b) If, in addition to such misdemeanor, the offender's intention is both to shoot and to kill some person in the house shot at, but he fails in that purpose, and if the firearm used is a weapon likely to produce death when so used, then the offense is that of assault with intent to murder.

 (c) Generally, the character of the weapon used, and the intention of the

person using it, are questions of fact for determination by the jury under all the evidence.

2. The record discloses no reversible error.

DECIDED OCTOBER 6, 1925.

Assault with intent to murder; from Forsyth superior court—Judge Blair. May 11, 1925.

*Anderson & Roberts,* for plaintiff in error.

*John S. Wood, solicitor-general,* contra.

LUKE, J. Gazaway was indicted with others for assault with intent to murder D. J. Bennett and others, by shooting at all, and actually shooting one of them, with guns and pistols. Being tried separately and found guilty, Gazaway made a motion for a new trial, based on the usual general grounds only, and he excepts to the overruling of the motion.

The evidence tends to make the following case: D. J. Bennett was a county policeman. On October 27, 1924, he stopped an automobile in which Gazaway and another were riding and searched it for whisky, but found none. That search, however, enraged Gazaway and some of his friends. On the following day, in company with others jointly indicted with him, Gazaway threatened to kill Bennett, saying: "We will get old Delmar [meaning D. J. Bennett] to-night." That threat was made in Gainesville, Georgia. Returning to their homes in Forsyth county that night, Gazaway and his party did not go the usual or the shortest route, but went a route that took them along the road on which Bennett lived. Bennett and his family had retired for the night before Gazaway and his party, who were traveling by automobile, arrived at or passed the Bennett dwelling. Bennett, who was still awake, heard the car pass and stop in the road some thirty or forty yards from his house. A moment later a shot was fired from the car. Going into his yard, but being unable to recognize the occupants of the car in the darkness, Bennett fired one shot up, not at any object. Another shot was immediately fired from the automobile, which sent a 45-caliber ball through the walls of Bennett's dwelling, hitting about fifteen feet from the ground and passing over the heads of the occupants. Bennett thereupon fired directly at the car and its occupants until they fled. Later, during the same night, after replenishing their supply of arms and ammunition from a country store and a farm house a few miles away, the auto-

mobile party returned to the Bennett home. Whether they returned with or without Gazaway, the evidence does not clearly show. But on their return, without stopping the automobile, members of the attacking party discharged at and into Bennett's dwelling house both a shotgun and a pistol, some of the missiles from these firearms penetrating the walls of the house, hitting and tearing through beds occupied by members of Bennett's family, and wounding his daughter.

1. Discussing that evidence, Gazaway's counsel, in their briefs here, contend that it is insufficient to authorize his conviction of any offense, "unless it be that .of shooting into the occupied dwelling of another." Under the principles announced in the headnotes, that concession is virtually an admission that the complaint here is without substantial merit. *Smallwood* v. *State,* 9 *Ga. App.* 300 (2) (70 S. E. 1124). It is true that the act of 1910 (Ga. L. 1910, p. 137; Park's Penal Code, § 115 (a)) makes it a misdemeanor "for any person to shoot at, toward, or into any occupied dwelling house in this State with any gun, pistol, rifle, or other deadly firearm, except in defense of person, property, or habitation, or under other circumstances of justification." But that statute does not in any sense modify or repeal section 115 of the Penal Code, defining the offense of unlawfully shooting at another, or section 97, which defines the offense of assault with intent to murder. The misdemeanor of unlawfully shooting into an occupied dwelling house may be committed without an intention to maim or wound any person therein; but the intent to wound is an essential element of the felony of unlawfully shooting at another, while the intent to murder, as the name of the offense itself implies, is an essential element of the greater felony of assault with intent to murder. *Fallon* v. *State,* 5 *Ga. App.* 659 (1) (63 S. E. 806). The intent with which the shot was fired is in both cases of felony a question for the jury. Park's Penal Code, § 97, and notes on "Intent." Also, in a case of assault with intent to murder, the deadly character and use of the weapon must be made to appear; and this, too, is usually a question for the jury. Park's Penal Code, § 97, and notes on "Weapon." But whether the accused is being tried for assault with intent to murder or for unlawfully shooting at another, it is, in so far as the essentials of these two felonies are concerned, wholly immaterial whether the person shot

or shot at was within or without his own or any other person's dwelling house.

2. We can not say that the verdict is without evidence to support it; and, the verdict having the approval of the trial judge, this court is without authority to disturb it.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*