## REED v. THE STATE.

GILBERT, J. 1. The verdict is supported by evidence, and therefore the court did not err in refusing a new trial on the general grounds.

2. No error is shown in the first ground of amendment of the motion, complaining that the court failed to state to the jury the contentions, claims, and defense relied on by the defendant. The second amending ground is merely an elaboration of the general grounds. The third ground of amendment is not approved by the trial judge.

3. Two other grounds complain that the court erred in not declaring a mistrial or reprimanding the solicitor-general (or in failing to control the matter by instructions to the jury) for statements made during his argument to the jury. Even if the statements were improper, there was no motion for a mistrial, nor did the movant make any objection or otherwise call the matter to the attention of the court. Therefore these grounds are without merit.

4. In another ground the movant complains: "Because the jury (evidently acting upon the demand of State's counsel) returned a verdict of guilty, without a recommendation and after deliberating only about fifteen minutes on the case. That it was a matter of impossibility for the jury to duly weigh all the voluminous and contradictory negro evidence in this case in the short space of fifteen minutes, and to fix the punishment of death, instead of a life sentence. That the defendant has not had a fair and impartial trial, for the reason that in a case where the death penalty was involved he was entitled under the law to a careful and painstaking consideration of all the evidence adduced upon the trial, and that his life should not be forfeited merely as an example to deter others from committing crime." This ground is without merit.

5. The court did not err in failing to charge the jury "that if you should find that in this case the State has failed to prove that the knife alleged to have been used was a deadly weapon, that is, one likely to produce death, and you should find that the defendant was not justified under the evidence in using the knife, then the defendant would be only guilty of involuntary manslaughter in the commission of an unlawful act, and the jury should so find." *Warren v. State*, 163 *Ga.* 176 (4) (135 S. E. 735). It is not the law that one who unlawfully kills another with a knife (not shown to be a weapon likely to produce death) can be convicted of no higher offense than involuntary manslaughter. In the case cited it was said: "If the defendant, without provocation (as the evidence tends to indicate), cut and stabbed the deceased with a knife and thereby inflicted a wound from which he died, he was guilty of murder, and his crime would not be that of involuntary manslaughter."

6. On a trial for murder, where the undisputed facts prove the accused killed another by cutting him with a knife four or five times, in the back, in the stomach, on the chin, and on the head, such wounds causing death in about twenty-four hours, it was not error to refuse a request to charge: "The burden is on the State to show to the jury by evidence that the knife alleged to have been used in the killing was a deadly weapon, that is, a weapon likely to produce death. A knife per

se is not a deadly weapon. That is to say, as a matter of law, a knife is not a deadly weapon. The proof must show the character of the knife, size, length of blade, etc., and from this proof the jury must determine whether or not the weapon was a deadly weapon, that is, a weapon likely to produce death."

7. The court did not err in charging the following: "Now on the subject of threats I charge you the law is this: Evidence of threats on the part of the defendant, if any have been shown, against one whom he is charged with assaulting, is admissible as tending to show malice and a consequent motive for the crime. Words are transient and are frequently the effect of sudden transport. They indicate sometimes a rash and unguarded character; at other times a malignant character. Sometimes they proceed from temporary irritation; at other times, from deep-rooted hostility. What was said by the defendant in this case as to threats, if anything, and what was meant, whether they were idle threats, or made with a purpose of carrying them into effect, are questions for the jury to determine. The effect of a threat as evidence is to be determined by the jury for themselves. The law makes no invariable deduction from the utterance of a threat, but leaves it to be weighed with the other facts in the case in the light of all the circumstances. If a threat is equally susceptible of two constructions, the one in favor of the hypothesis of innocence is the one that ought to be adopted." The criticisms were: (1) The evidence did not authorize any charge on the subject of threats. One witness swore that the defendant told witness, a few days before the homicide: "If he hadn't thought so much of me [witness], he would have done something to him [deceased]." (2) The charge assumed that threats had been made. (3) The charge placed the defendant's character in issue, and in effect instructed the jury that the defendant was of "malignant character." (4) It was error to instruct the jury that the evidence "was admissible as tending to show malice," because the evidence did not authorize the jury to find malice. (5) The entire charge was harmful and prejudicial, as it in effect instructed the jury that the language (evidence) set out, if used, was a threat, and it was admitted "as tending to show malice and a consequent motive for the crime."

8. Under the evidence the court did not err in charging: "But if the defendant provoked the difficulty with the intent to kill the deceased, and the deceased resisted the attack and was killed in the ensuing fight by the defendant in pursuance of his intention to kill, it would not be manslaughter, but would be murder."

9. The court did not err in charging: "The defendant has made a statement in this case, as he had a right to do under the law. In all criminal trials the defendant may make to the court and jury just such statement as he sees fit in his own defense. It is not under oath. He can not be cross-examined unless he consents to be. But you may believe his statement in preference to all the sworn testimony in the case. You may disbelieve it entirely. You may give it just such weight and credit as you may think it is entitled to receive."

10. The court did not err in the following charge: "Malice shall be implied, says our law, where no considerable provocation appears, and

where all the circumstances of the killing show an abandoned and malignant heart. An abandoned and malignant heart, in the sense of the law, is commonly held to be evidenced by a weapon likely to produce death, and a brutal and bloodthirsty use of the same." The criticism is that the court assumed that the knife used in the killing was per se a weapon likely to produce death or shown by the evidence to be such. The charge states a correct abstract principle of law. From the nature of the wounds the jury were authorized to find that the knife, used in the ordinary way, was a weapon likely to produce death (*Paschal* v. *State*, 125 *Ga*. 279, 280, 54 S. E. 172), and that there was a brutal and bloodthirsty use of the same. See also *Hanvey* v. *State*, 68 *Ga*. 612 (4), 615.

11. The court did not err in "failing to give in charge to the jury the law relating to and defining a deadly weapon."

12. The court did not err in failing to charge the jury on the law of involuntary manslaughter.

13. Movant complains that the court charged on murder, voluntary manslaughter, and justifiable homicide, reading the sections of the Penal Code on the subject, but failed to read section 76 of the Penal Code, to wit: "The homicide appearing to be justified, the person indicted shall, upon the trial, be fully acquitted and discharged." *Held*, no error. *Taylor* v. *State*, 121 *Ga*. 348, 356 (49 S. E. 303).

14. The remaining grounds of the motion do not show error, and are not of such character as to require detailed statement.

*Judgment affirmed. All the Justices concur.*

On motion for a rehearing, the motion being denied, Russell, C. J., and Atkinson, J., dissent on the ground that they do not concur in the ruling stated in the 12th headnote.

No. 7074. MAY 15, 1929. REHEARING DENIED JULY 19, 1929.

734

*A. S. Oldham, Jake Joel,* and *Shackelford & Shackelford,* for plaintiff in error.

*George M. Napier, attorney-general, Henry H. West, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.